NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT V. VIALE,**

*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2017-2532

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-3677, Senior Judge Kenneth B. Kramer.

---

Decided:  August 23, 2018

---

GWENDOLYN TAWRESEY, Pepper Hamilton LLP, Boston, MA, argued for claimant-appellant.  Also represented by GOUTAM PATNAIK, Washington, DC.

ZACHARY JOHN SULLIVAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER; BRIAN D.

GRIFFIN, ANDREW J. STEINBERG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before O'MALLEY, REYNA, and HUGHES, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Robert V. Viale appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying his claim for service connection for posttraumatic stress disorder ("PTSD"), which he alleges developed as a result of a stressor event he experienced more than fifty years ago. *See Viale v. Shulkin*, No. 15-3677, 2017 WL 2628379 (Vet. App. June 19, 2017). Because Viale's challenge amounts to a request to reweigh the evidence, we *dismiss* the appeal for lack of jurisdiction.

BACKGROUND

Viale served on active duty as an officer in the U.S. Army from October 1966 to October 1968. During his first year of service, Viale worked as a battalion maintenance officer in Korea, where he earned high performance marks from his commanding officers. Beginning in August 1967, however, Viale was assigned to a six-month stint in Bangkok, Thailand, as a transportation officer. Viale claims that, shortly after arriving in Thailand, he observed thousands of batteries, tires, and other supplies missing from the motor pool, leading him to suspect corruption among the officers in charge. According to Viale, when he informed his commanding officer of the missing items, he was told to "shut up" and not to tell anyone of his suspicions. *Id.* at *1. Viale also claims that, around that time, his roommate told him of another officer who allegedly discovered similar corruption and was murdered on his way home from work, and whose death was covered up by the military. Viale alleges that

he reported the corruption to the Inspector General, who, despite revealing that the "whole command was corrupt," took no action. *Id.*

Viale testified that he was thereafter assigned to deliver a vehicle to northern Thailand by driving it alone, at night, and without any weapons. He claims that this order was inconsistent with the standard practice at the time of delivering vehicles across Thailand by air, and further claims that he was not authorized to drive in the country. Believing that this was a plot to kill him, Viale testified that he requested and received a note from a doctor at the U.S. Embassy excusing him from the assignment. After purportedly presenting the note to his commanding officer, Viale was verbally reprimanded and received poor performance evaluations until late 1967, when he was transferred back to Korea. Thereafter, Viale again earned high marks until he returned to the United States.

In January 2008—nearly forty years after his active military service ended—Viale filed a claim for disability compensation with the Department of Veterans Affairs ("VA") seeking service connection for various acquired psychiatric conditions, including PTSD. Viale alleged that his experience in Thailand constituted an in-service stressor event that gave rise to his PTSD years later. The VA denied Viale's claim, and the Board of Veterans' Appeals ("Board") affirmed, finding that Viale failed to provide "enough credible detail to corroborate the alleged stressor." J.A. 16. The Veterans Court then affirmed the Board's ruling, finding that Viale's challenge to that ruling "amount[ed] to a mere disagreement with the Board's weighing of the evidence[.]" *Viale*, 2017 WL 2628379, at *2.

Viale appealed to this court, seeking to invoke our jurisdiction under 38 U.S.C. § 7292(a).

DISCUSSION

"This court's jurisdiction to review decisions by the Veterans Court is limited." *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). We "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1); *see also id.* § 7292(a); *Halpern v. Principi*, 384 F.3d 1297, 1300 (Fed. Cir. 2004). Absent a constitutional issue, however, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C § 7292(d)(2).

According to 38 C.F.R. § 3.304(f), "[a] non-combat veteran seeking to establish service connection for PTSD must establish (1) a current medical diagnosis of PTSD; (2) a link between the current symptoms and an in-service stressor; and (3) 'credible supporting evidence that the claimed in-service stressor occurred.'" *Kays v. Snyder*, 846 F.3d 1208, 1211 (Fed. Cir. 2017) (quoting 38 C.F.R. § 3.304(f)). The parties' dispute here concerns only the third requirement—i.e., whether Viale produced sufficient evidence to corroborate the claimed stressor event.

Section 3.304(f)(5) enumerates several categories of corroborating evidence that may be used in cases where, as here, a PTSD claim is based on "in-service personal assault."[1] In such cases, the veteran can rely on "statements from family members," as well as "[e]vidence of behavior changes," including "deterioration in work performance" and "unexplained economic or social behav-

---

[1] Because Viale does not allege that an *actual* assault took place, it is questionable whether § 3.304(f)(5) applies. We need not resolve this issue because we, like the Veterans Court, *see Viale*, 2017 WL 2628379, at *2, assume without deciding that § 3.304(f)(5) applies to the facts here.

ior changes." 38 C.F.R. § 3.304(f)(5). Section 3.304(f)(5), however, does not relieve the burden otherwise imposed on the veteran by § 3.304(f) to corroborate the stressor event. *See Kays*, 846 F.3d at 1211; *Serv. Women's Action Network v. Sec'y of Veterans Affairs*, 815 F.3d 1369, 1373 (Fed. Cir. 2016) ("[W]hen the stressor is related to an in-service personal assault, . . . the veteran is required to provide corroborating evidence to substantiate the occurrence of the stressor."). Instead, the provision "merely defines the scope of allowable evidence to be used in determining whether a stressor is corroborated." *Menegassi v. Shinseki*, 638 F.3d 1379, 1383 (Fed. Cir. 2011).

"[O]nce such evidence is submitted, it is incumbent on the Board to evaluate the weight of the evidence," which involves "quintessential factual inquir[ies]" regarding the veteran's "evidence, statements, and credibility." *Kays*, 846 F.3d at 1211–12 (internal quotation marks omitted). This is precisely the analysis the Board undertook here. First, the Board considered Viale's testimony about how his life had changed after returning from Thailand but found that the testimony was "contradictory" to other evidence in the record. Such evidence included: (1) Viale's medical history report, completed one year after he was transferred out of Thailand, in which he "denied ever having or having then depression or excessive worry or nervous trouble of any sort"; and (2) 1998 and 1999 medical records of a PTSD screening, indicating that Viale "specifically denied any terrible experience that involved being attacked or being threatened" while in service. J.A. 17–18. The Board noted that these records were "made contemporaneously with the time periods in question" and determined that they "contradict [Viale's] allegation that he was immediately and permanently impacted by his Thailand experience." J.A. 18.

The Board next considered the negative performance review that Viale received during his service in Thailand, but found it insufficiently corroborative, in part because

Viale received stellar marks immediately upon returning to Korea. Finally, the Board cited other examples of inconsistent statements provided by Viale and determined that they "further weaken[ed]" his claim. *Id.* Weighing the evidence, the Board concluded that "the events described in service and alleged by [Viale] as the cause of his psychiatric disability" were "lacking credibility." J.A. 20. The Board thus engaged in a series of fact-intensive credibility determinations that we lack jurisdiction to review. *See Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder. We lack jurisdiction to review these determinations."); *see also Gardin v. Shinseki*, 613 F.3d 1374, 1380 (Fed. Cir. 2010) ("Whether the Veterans Court was correct in affirming the Board's credibility determination is a question of fact beyond this court's jurisdiction.").

Viale's attempt to characterize his challenge as legal in nature fails. Viale argues, for example, that the Board misapplied the law by imposing a heightened burden to corroborate the in-service stressor event. Viale latches onto the Board's statement that Viale was required to "verify"—instead of "corroborate"—the occurrence of the stressor. J.A. 8; J.A. 16–17; J.A. 19–20. Viale reads too much into the Board's choice of words. Nowhere did the Board categorically dismiss potentially corroborative evidence or otherwise impose a heightened standard. Rather, the Board discussed all the evidence of record and gave more weight to the evidence that refuted Viale's claims than to the evidence that supported them. Thus, the Board's use of the word "verifying" does not constitute legal error that would give us jurisdiction over Viale's appeal. *Cf. Belcher v. Shinseki*, 490 F. App'x 353, 355–56 (Fed. Cir. 2012) (per curiam) (dismissing appeal where the appellant argued that the Veterans Court applied "too stringent a standard" merely because the court used the

phrase "meaningful support" rather than the phrase "credible support," which appears in the relevant statute and regulation).

Viale next argues that the Board failed to consider "all information and lay and medical evidence of record," as required under 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.303(a). In particular, Viale asserts that the Board did not consider letters from Viale's sisters that attest to his personality changes upon returning from Thailand. But there is a presumption that the Board *did* consider such evidence. *See Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) ("There is a presumption that VA considered all of the evidence of record. . . . The evidence was before the Board. The fact that it was not specifically mentioned in the Board's decision in this case is insufficient to overcome this presumption." (citation omitted)); *Howlett v. Shinseki*, 431 F. App'x 925, 927 (Fed. Cir. 2011) ("The Board is presumed to have considered all evidence of record at the time of the VA's determination of service connection. Nothing requires the Board to discuss every piece of submitted evidence in its decision." (citation omitted)). Viale does not provide persuasive reasons why we should disregard that presumption here.

While it is true that the Board's decision does not reference the letters in the section addressing Viale's PTSD claims, the decision *does* reference the letters in a section addressing his claims vis-à-vis another psychiatric condition. In that section, the Board determined that the letters were inconsistent with Viale's own statements at various times throughout his life and were "not supported by the contemporaneous records." J.A. 20. Thus, the Board clearly considered the letters for their evidentiary value, even if it did not expressly do so in the context of discussing PTSD. Viale's argument on this score is no more than a disagreement with the Board's weighing of the evidence, which, again, we do not have jurisdiction to review. *Howlett*, 431 F. App'x at 927–28.

Relatedly, Viale argues that the Board improperly construed the absence of contemporaneous evidence of the stressor event as evidence that the event did not occur, in contravention of *AZ v. Shinseki*, 731 F.3d 1303 (Fed. Cir. 2013). In *AZ*, we held that, "where an alleged sexual assault[] . . . is not reported, the absence of service records documenting the alleged assault is not pertinent evidence that the assault did not occur" for purposes of § 3.304(f)'s corroboration requirement. *Id.* at 1318. Even assuming *AZ* applies to the facts here, it would prohibit the Board only from using the absence of a report pertaining to the events that occurred in Thailand as evidence that the events did not occur. The Board did not commit such an error. Rather, the Board noted that Viale's evidence was inconsistent with the statements that he made years earlier. In other words, the Board determined that *conflicting* evidence—and not merely the absence of evidence—precluded Viale's claim.

Finally, Viale argues that the Board's treatment of his performance reviews is inconsistent with the standard set forth in 38 C.F.R. § 3.304(f)(5), which expressly lists "deterioration in work performance" as one category of permissible corroborating evidence. Viale further asserts that the Board substituted its own medical judgment by concluding that Viale's low performance evaluations immediately following the incident in Thailand were not probative merely because, after Viale returned to Korea, his performance reviews improved. But, the mere fact that § 3.304(f)(5) lists "deterioration in work performance" as one type of evidence that may be considered does not mean that such evidence is always determinative. *See Kays*, 846 F.3d at 1211 ("[W]e have rejected the argument that a veteran meets this burden [imposed by § 3.304(f)] by pointing to any evidence."); *Menegassi*, 638 F.3d at 1382 n.1 ("The mere submission of [evidence], pursuant to 38 C.F.R. § 3.304(f)(5), does not preclude the Board from making a factual determination regarding the weight to

be given that [evidence].").  Here, the Board considered the evidence for its probative value, which is all that § 3.304(f)(5) required.  *See AZ*, 731 F.3d at 1311 ("Supporting evidence found in [the sources enumerated in § 3.304(f)(5)], if credible and pertinent, is positive evidence of the in-service stressor that the VA must consider.").  Although it is possible that we might have weighed Viale's disparate performance evaluations differently had we considered them in the first instance, we do not have jurisdiction to review the Board's weighing of that evidence.

CONCLUSION

For the foregoing reasons, we *dismiss* Viale's appeal for lack of jurisdiction.

**DISMISSED**

COSTS

No costs.